# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JASON BROOKS,
Plaintiff.

v.

COLORADO DEPARTMENT OF CORRECTIONS,
ADRIANNE SANCHEZ,
JOSHUA URQUHART,
JULIE MILEHAM,
19TH JUDICIAL DISTRICT,
BOB JAROS,
EVAN STATHOPULOS,
ULISSES PALMA,
AMANDA MANBECK,
ANGELA LUJAN,
LYNDA LINDSEY,
TAMMY NELSON,
MARCI HOFFMAN
PHIL WEISER,
DOES 1-10,
Defendant(s).

---

## FIRST AMENDED VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not. contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Jason Brooks      636 Barberry Drive        Longmont, CO  80503
(Name and complete mailing address)

(925)366-0803                          geniusjasonbrooks@gmail.com
(Telephone number and e-mail address)

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:    Colorado Department of Corrections      1250 Academy Park Loop
                (Name and complete mailing address)    Colorado Springs, CO 80910

                Phone: 719-579-9580      Email: cdoc@state.co.us

Defendant 2:     Adrianne Sanchez                      Associate Director of Legal Services
                (Name and complete mailing address)  1250 Academy Park Loop
                                                      Colorado Springs, CO 80910

                Phone: 719-579-9580

Defendant 3:     Josh Urquhart                         Senior Assistant Attorney General
                (Name and complete mailing address)   1300 Broadway, 10th Floor
                                                       Denver, CO 80203

                Phone: 720-508-6000      Email: joshua.urquhart@coag.gov

Defendant 4:     Julie Mileham                         Director of Risk Management
                (Name and complete mailing address)   1525 Sherman Street, 5th Floor
                                                       Denver, CO 80203

                Phone: 303-866-4277      Email: julie.mileham@state.co.us

Defendant 5:    19th Judicial District
            (Name and complete mailing address)    901 9th Avenue
                                Greeley, CO 80631


            Phone: (970) 475-2400    Email:

Defendant 6:    Bob Jaros                State Controller
            (Name and complete mailing address)    1525 Sherman Street
                                Denver, CO 80203


            Phone: (303) 866-6200    Email: bob.jaros@state.co.us

Defendant 7:    Evan Stathopulos    Central Accounting and Vendor Operations Manager
            (Name and complete mailing address)    1525 Sherman Street
                                Denver, CO 80203


            Phone: (303) 866-6200    Email: evan.stathopulos@state.co.us


Defendant 8:    Ulisses Palma    19th Judicial District Collections Manager
            (Name and complete mailing address)    901 9th Avenue
                                Greeley, CO 80631


            Phone: (970) 475-2501    Email: ulisses.palma@judicial.state.co.us


Defendant 9:    Amanda Manbeck 19th Judicial District Administrative Office Manager
            (Name and complete mailing address)    901 9th Avenue
                                Greeley, CO 80631


            Phone: (970) 475-2501    Email: amanda.manbeck@judicial.state.co.us

Defendant 10:    Anjela Lujan                Deputy Controller
            (Name and complete mailing address)    1300 Broadway
                                Denver, CO 80203


            Phone: (720) 625-5849    Email: angela.lujan@judicial.state.co.us

Defendant 11: ___Lynda Lindsey_____ Office of Restitution Services & Collections Manager
(Name and complete mailing address)   1300 Broadway, Suite 1200
Denver, CO 80203

___Phone: (720) 625-5868   Email: angela.lujan@judicial.state.co.us___

Defendant 12: ___Tammy Nelson_____ Deputy State Controller___
(Name and complete mailing address)   1300 Broadway
Denver, CO 80203

___Phone: (303)866-6200   Email: tammy.nelson@state.co.us___

Defendant 13: ___Marci Hoffman_____ Court Executive___

(Name and complete mailing address)   901 9th Avenue
Greeley, CO 80631

___Phone: (970) 475-2500   Email: marci.hoffman@judicial.state.co.us___

Defendant 14: ___Phil Weiser_____ Colorado Attorney General___
(Name and complete mailing address)   1300 Broadway
Denver, CO 80203

___Phone: (720) 508-6000   Email:___

Defendant 15: ___Phil Weiser_____ Colorado Attorney General___
(Name and complete mailing address)   1300 Broadway
Denver, CO 80203

___Phone: (720) 508-6000   Email:___

Defendant 16: ___DOE's 1-5_____ Colorado Attorney General Office___
(Name and complete mailing address)   1300 Broadway
Denver, CO 80203

___Phone: (720) 508-6000   Email:___

4

Defendant 17: _____DOE's 6-10_____    19th Judicial District_____
                                              901 9th Avenue
                                              Greeley, CO 80631

        _____Phone: (970) 475-2400___Email:_____

The true names and capacity of DOE Defendants, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sue said Defendant by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and therefore alleges, that the DOE Defendants are, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged. All references to "Defendants" in the Complaint include DOE Defendants.

## C. JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

__X__ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States).

    List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.
     FIRST, EIGHTH, AND FOURTHEENTH AMENDMENTS.

Plaintiff is a citizen of the United States and the State of Colorado.

Defendants 1 and 5 are arms of the State of Colorado being sued in their official

capacities.

Defendants are incorporated under the laws of the State of Colorado.

Defendants have their principal place of business in the State of Colorado.

Defendant Weiser is being sued in his individual and official capacity.

Defendant Jaros and Mileham are being sued in their individual and official capacities

5

All other Defendants named by name are being sued in their individual capacities and all Defendants are citizens of the United States and, upon information and belief, citizens of the State of Colorado.

## D. STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

### BACKGROUND

1. On December 15, 2022, a jury awarded Plaintiff $3.5 million against Defendant CDOC for violations of Title II of the Americans with Disabilities Act and unconstitutionally denying Plaintiff access to food, violating the Eighth Amendment.

2. On April 28, 2023, judgment entered for $3,500,000 plus post-judgment interest, creating a vested property interest in Plaintiff's favor under the Fourteenth Amendment. *See Brooks v. CDOC*, 13-cv-02894-SKC, ECF 461 ("*Brooks I*").

3. Shortly after judgment, discussions occurred among Defendants Sanchez, CDOC, Urquhart, DOE's 1-5 in the Colorado Attorney General's Office, Mileham, and the Office of Risk Management regarding strategies to avoid paying Plaintiff directly, after they obstructed a $1,185,000 settlement offer Plaintiff made just to ensure he would never personally receive a dime of the judgment proceeds.

4. In early 2023, Defendants planned to improperly use Colorado's Restitution Act, C.R.S. § 16-18.5-104, and Colorado's Vendor Offset Law ("Intercept Statute), C.R.S. § 24-30-202.4

6

to seize Plaintiff's award in its entirety and divert it to satisfy his restitution obligation from his criminal case, despite the Intercept Statute not permitting intercepts of restitution debts. Judicial Districts are also prohibited from invoking the Intercept Statute because they are not a state agency and there is no department "head" able to draw a voucher under the statutes refund mechanism.

5. On May 15, 2023, Defendant 19th Judicial District, acting through Defendants Palma, Manbeck, Hoffman, and its DOE employees 6-10, created and filed a Transcript of Judgment—otherwise known as a perfected restitution lien—with the Colorado Secretary of State at the direction and coordination of Defendant Urquhart and DOE Defendants 1-5.

6. C.R.S. § 16-18.5-104, however, does not permit the State of Colorado to perfect a restitution lien against Plaintiff or any defendant sentenced to the CDOC. Despite this limitation, Defendants developed a coordinated plan to create the appearance of a valid lien, transmit it to the State Controller, and intercept Plaintiff's federal judgment award.

7. Plaintiff's judgment in *Brooks I* was for personal injury and sickness, making the judgment exempt from garnishment under Colorado law pursuant to C.R.S. § 13-54-102(1)(n)[1]. Thus, even if a valid perfected restitution lien could be filed and enforced against Plaintiff—and even if a judicial district could invoke the Intercept Statute—the federal judgment was exempt from garnishment, levy, or seizure under Colorado law.

8. After receiving the Transcript of Judgement, at the advisement and direction of DOE Defendants 1-5 in the AG's Office, the State Controller's Office, through Defendants Stathopulos, Lujan, Nelson, Jaros, and Mileham, developed and implemented an never-

---

[1] "Any proceeds of a claim for personal injury or sickness, including compensation for loss of future earnings, are exempt from execution."

before-created computed code within the Colorado Operations Resource Engine ("CORE"),
the State's financial management system, to automatically flag and divert Plaintiff's
judgment funds in this one "special case."

9.  At no time was Plaintiff alerted to the creation or filing of the Transcript of Judgment, nor
notified "of the controller's authority to withhold debts owed to state agencies under the
vendor offset intercept system pursuant to section 24-30-202.4 (3.5)(a)(I) and the types of
debts that are subject to withholding under said system." C.R.S. § 24-30-202(1). These
failures violated the plain requirements of C.R.S. § 24-30-202.4 and § 24-30-1510, which
mandate notice, valid lien certification, and consideration of exemptions before any
intercept.

10. Under Colorado law, a debtor is required to be informed about the seizure before it happens,
the intent of the government to seize the property, and a chance to redeem it. No pre-
deprivation procedural due process was provided Plaintiff, and no post deprivation remedies
exist under the Intercept Statute's refund mechanism because Defendant 19th Judicial
District has no "head" to draw a voucher.

11. On March 26, 2024, Defendants executed their plan and intercepted the entire federal
judgment. Defendant 19th Judicial District, Palma, Manbeck, Hoffman, and DOE's 6-10
then dispersed the money to the victims of Plaintiff's criminal case the same day, at DOE's
1-5 direction.

12. On February 3, 2025, Mr. Brooks received a 1099-MISC tax form from Defendant
Stathopoulos office, Central Accounting and Vendor Operations, listing the entire judgment
of $3,500,000 plus interest as "other income" that he must report to the IRS and Colorado
Department of Revenue on his federal and state tax returns, leaving a tax burden on the

judgment Plaintiff has no money to pay.

13. As a direct result, Plaintiff was deprived of his $3.5 million judgment plus interest, subjected to federal tax liability on phantom income he never received, and retaliated against for exercising his right to litigate against CDOC.

## CLAIM ONE
### Fourteenth Amendment Procedural Due Process Violation

14. Plaintiff incorporates by reference paragraphs 1-12 as though fully set forth herein.

15. Plaintiff was personally deprived of a $3.5 million (plus interest) personal injury and sickness judgment through an unlawful intercept initiated by Defendants and unlawfully executed and hidden from Plaintiff.

16. Defendants CDOC (¶3) Jaros (¶8), Nelson (¶8, ¶12), Stathopulos (¶8–9), Mileham (¶3, ¶8), Urquhart (¶3, ¶5, ¶6), Sanchez (¶3, ¶6), Lujan (¶5, ¶8), Palma (¶5), Manbeck (¶5), Hoffman (¶5), DOES 1-5 (¶3. (¶6, ¶11), and DOE 6-10 (¶5, ¶11) each personally participated by certifying, transmitting, advising, coding, approving, or executing the fraudulent lien, the intercept, and disbursing the funds.

17. Defendants intentionally and unlawfully violated the Fourteenth Amendment by failing to provide Plaintiff with notice of the spurious lien, notice of their intent to seize Plaintiff's judgment, or any opportunity to contest. Defendant Jaros ensured his office disregarded the express requirements of the intercept statute, which mandate notice of the Controller's authority to withhold vendor payments. By October 25, 2023, Defendant Jaros personally approved the intercept process created by Defendants Stathopulos, Nelson, and Lujan. On March 25, 2024, Defendants Stathopulos, Mileham, and Jaros met and executed the intercept with full knowledge that it was unlawful.

18. Defendant 19th Judicial District, acting through Defendants Palma, Manbeck, Hoffman, and

9

DOE Defendants 6–10, knowingly created and filed a fraudulent Transcript of Judgment under C.R.S. § 16-18.5-104. Each understood the statute does not apply to Plaintiff, making the lien void *ab initio*. This was not a passive recordation — it was the operative act that triggered Defendant Stathopoulos's creation of computer code in CORE to carry out the intercept.

19. A lien that is *void ab initio* creates no enforceable property interest in favor of the State, and any seizure based on such a lien constitutes an unlawful taking and deprivation of property without due process of law in violation of the Fourteenth Amendment.

20. Without the fraudulent lien, Defendants could not have lawfully initiated the intercept, and Plaintiff's judgment would have remained in his possession. All downstream actions — including seizure of funds, disbursement to restitution victims, and issuance of IRS Form 1099 — are likewise void, as they were predicated on an invalid lien.

21. Defendants provided no notice to Plaintiff before filing the lien or before initiating the intercept. This omission deprived Plaintiff of the right to contest and assert statutory exemptions, including the exemption under C.R.S. § 13-54-102(1)(n) for personal injury and sickness judgments.

22. Plaintiff also lacked any post-deprivation remedy because the 19th Judicial District has no "head" capable of drawing a voucher. Under C.R.S. § 24-30-203(1), refunds may only be issued upon submission of a proper voucher by the head of a department. No such mechanism existed here.

23. On the same day the intercept occurred, DOE Defendants 1–5 advised the 19th Judicial District and its agents to "get rid of the money as fast as possible." This advice was consistent with arguments previously made by CDOC and Urquhart in *Brooks I* that paying

10

Plaintiff would constitute a "double recovery."

24. Defendants CDOC, Sanchez, Urquhart, Mileham, the 19th Judicial District, Palma, Manbeck, Hoffman, and DOE Defendants 1–10 all anticipated that Plaintiff would challenge the seizure. To prevent any recovery, the 19th Judicial District, acting through Palma, Manbeck, Hoffman, and DOE Defendants 6–10, processed and mailed over $3.5 million in restitution disbursements to more than 60 victims in a single day. This required generating dozens of checks in the judicial district's collections system, approving and signing them, batching them for issuance, and mailing them simultaneously. The purpose of this mass disbursement was to deliberately eliminate Plaintiff's ability to obtain post-deprivation relief by ensuring that his award had already been dissipated. CDOC, Sanchez, Urquhart, and Mileham had planned this operation months in advance (¶3).

25. Defendant Phil Weiser, Attorney General of Colorado, is responsible for supervising the conduct of attorneys in his office, including Defendant Urquhart and DOE Defendants 1–5. Weiser fully understands that due process requires notice and an opportunity to be heard before any citizen is deprived of property, yet failed to ensure that attorneys under his authority complied with these constitutional mandates.

26. Defendant Weiser's failure to train, supervise, or discipline his subordinates allowed Defendant Urquhart and DOE Defendants 1–5 to advise state officials to create and file a fraudulent restitution lien and to execute an unlawful intercept against Plaintiff's federal judgment..

27. Because Plaintiff was denied both pre-deprivation and post-deprivation remedies, and because the 19th Judicial District is not a state "department" capable of drawing a refund voucher, Plaintiff was left with no statutory path to recover his judgment.

11

28. Plaintiff seeks declaratory and injunctive relief, compensatory damages, damages for emotional distress, damages for loss of use of funds and quality of life, and punitive damages against all Defendants whose conduct was intentional, reckless, or negligent in depriving Plaintiff of constitutional protections

29. Plaintiff further seeks injunctive relief against Defendant Weiser, in his official capacity, to prevent ongoing and future constitutional violations. Specifically, Plaintiff requests an order requiring the Attorney General's Office to adopt policies and training to ensure that staff attorneys do not direct or approve the creation of unlawful liens or intercepts, and to implement supervisory and disciplinary measures to deter similar misconduct.

## CLAIM TWO
### Civil Conspiracy

30. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

31. This civil conspiracy claim is brought under 42 U.S.C. § 1983, not 42 U.S.C. § 1985(3). Plaintiff does not allege a class-based or discriminatory animus. Rather, Plaintiff alleges that Defendants, acting under color of state law, entered into an agreement by words or conduct to deprive him of his vested property interest without due process, carried out overt acts in furtherance of that agreement, and caused him injury.

32. Defendants CDOC, Sanchez, Urquhart, Mileham, Jaros, Stathopulos, Nelson, Lujan , Palma, Manbeck, Hoffman, Lindsey, and DOE Defendants 1–10 agreed by words and conduct to ensure Plaintiff was personally and permanently deprived of his federal judgment.

33. The unlawful purpose of this agreement was to ensure Plaintiff never personally received his award. The unlawful means included.

12

34. Filing a fraudulent lien under C.R.S. § 16-18.5-104, a statute that does not apply to Plaintiff as a CDOC sentenced inmate and did not authorize seizure of a federal ADA judgment;

35. Developing and implementing a special one-off computer code in CORE for this one "special case" to add the 19th Judicial District as an intercepting entity under the Intercept Statute, C.R.S. § 24-30-202.4, despite knowing a judicial district cannot be considered a "state agency" under that statute;

36. Intercepting a restitution debt, despite the Intercept Statute not authorizing such debt to be a basis for vendor offset;

37. Concealing the lien and intercept from Plaintiff and his counsel, depriving him of both pre-deprivation and post-deprivation remedies;

38. Routing intercepted funds through a judicial district, in violation of statutory payment pathways that require state funds to pass through the State Treasurer; and

39. Violating Colorado exemption law, C.R.S. § 13-54-102(1)(n), which protects personal injury and sickness judgments from levy, garnishment, or seizure.

40. Defendants engaged in multiple overt acts in furtherance of this conspiracy, including but not limited to:

41. Defendants' 19th Judicial District, acting through Palma, Manbeck, Hoffman, and DOE Defendants 6–10, filed a fraudulent Transcript of Judgment with the Secretary of State, going so far are indicating a fraudulent recording date of Plaintiff's conviction and original restitution amount owed on the document to evade statutory restrictions.

42. Defendant 19th Judicial Department and its agents coordinated with Defendant DOE's 1-5, Lujan, and Stathopoulos repeatedly to ensure they had properly set the judicial district as an intercepting entity CORE;

43. DOE Defendants 1–5 advising and authorizing the fraudulent lien and intercept process, fully understanding the entire process was *ultra vires*;

44. Defendants Stathopulos, Mileham, Lujan, Nelson, and Jaros coding CORE, authorizing intercept processes, and approving vouchers;

45. Defendants Palma, Manbeck, Hoffman, and DOE Defendants 6–10 disbursing more than $3.5 million in restitution checks in a single day, requiring preparation, signing, batching, and mailing of dozens of payments;

46. Defendants CDOC, Sanchez, Urquhart, and Mileham usurping the State Claims Board's statutory authority by refusing to present Plaintiff's $1,185,000 settlement proposal, thereby blocking any lawful resolution of his claims to ensure he would not personally receive a dime of the award;

47. Defendant Weiser's refusal to order the removal of the fraudulent lien from the Secretary of State's records, after being specifically requested to do so, a continuing overt act depriving Plaintiff of property and credit; and

48. Defendant Lindsey coordinated with victims of Plaintiff's criminal case to ensure the intercept occurred—a weaponization of state power for private benefit.

49. On March 25, 2024, despite Plaintiff's attorney having requested judicial resolution before any funds were diverted, Defendants Stathopulos, Mileham, and Jaros met, ignored the warning, and executed the intercept the following day with full knowledge that their actions were unlawful.

50. The conspiracy's objective was to deprive Plaintiff of his constitutional rights: to seize his judgment without notice or hearing, to eliminate statutory remedies, and to retaliate against him for prevailing in *Brooks I*.

14

51. Plaintiff was injured as a result of this conspiracy. He was deprived of his over $3.5 million judgment that was exempt *in toto* from levy or seizure, subjected to federal tax liability on phantom income he never received, and left without any statutory or judicial avenue for recovery. He has suffered financial harm, emotional distress, and chilling of his right to petition the courts.

52. Defendants' conduct was intentional, malicious, and undertaken in bad faith. Plaintiff is entitled to nominal, compensatory, and punitive damages, along with equitable relief to remedy the ongoing harms caused by this unlawful conspiracy.

53. Plaintiff respectfully requests that this Court refer this matter to the United States Department of Justice for investigation into potential criminal violations by state officials, including civil rights violations under 18 U.S.C. §§ 241–242, and fraud and misconduct surrounding the execution of a restitution lien and seizure of exempt personal injury funds.

54. Plaintiff also request the Court to make a referral to the Colorado Office of Attorney Regulation Counsel for investigation into attorney misconduct, including ethical violations involving deceit, abuse of authority, and misrepresentation and any other authority to investigate the actions of Defendant Jaros and Mileham.

## CLAIM THREE
### First Amendment Retaliation

55. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

56. Plaintiff engaged in protected First Amendment activity by filing and successfully litigating *Brooks I* against Defendant CDOC, in which a jury awarded him $3.5 million for ADA and Eighth Amendment violations.

57. Defendants CDOC, Sanchez, Urquhart, and Mileham, and resented Plaintiff's success, expressed hostility toward him, and agreed to retaliate by ensuring he would never

15

personally receive his judgment through unlawful means.

58. Defendants' retaliatory objective was to punish Plaintiff for prevailing in *Brooks I* by:

59. Preventing him from receiving a single penny of his judgment;

60. Creating an unpayable federal tax burden by issuing fraudulent IRS forms; and

61. Coordinating with victims of his criminal case to further harass and burden him.

62. Overt retaliatory acts included:

63. Defendant Urquhart telling his co-counsel outside the courtroom during *Brooks I* that Plaintiff he would "never get the money," followed by secret planning with Mileham, Sanchez, and others to divert the judgment through knowingly illegal means.

64. Defendants 19th Judicial District, Palma, Manbeck, Hoffman, and DOE Defendants 6–10 filing a fraudulent restitution lien and concealing it from Plaintiff;

65. Defendants Stathopulos, Mileham, and Jaros meeting on March 26, 2024, to finalize the intercept, despite Plaintiff's attorney requesting that no money be diverted before court resolution on March 25, 2025;

66. Defendants Stathopulos, Nelson, Jaros, and Lujan creating special coding in CORE to divert Plaintiff's funds for this one "special case," which had never been done before;

67. Disbursing $3.5 million in restitution checks to over 60 victims in a single day to eliminate remedies;

68. Defendant Lindsey coordinating victim involvement despite statutory prohibitions;

69. Defendant CDOC and Sanchez usurping the Claims Board's settlement authority to block Plaintiff's $1.185 million settlement proposal;

70. Defendant CDOC sending letters to victims encouraging them to pursue independent collection, resulting in Boulder County interrogatories against Plaintiff;

16

71. Defendants Stathopulos and Jaros issuing a fraudulent 1099-MISC form, treating the entire judgment as taxable income;

72. Defendants' conduct demonstrates they knew their actions were unlawful. Had they believed otherwise, they would have provided Plaintiff with mandatory notice under C.R.S. § 24-30-202.4(3.5)(a)(I). Defendant Jaros in particular was required by statute to send notice when he approved adding Plaintiff's restitution debt to CORE on October 25, 2023, but he deliberately failed to do so.

73. Defendant Urquhart and DOE's 1-5 also knew restitution is not a listed debt under the Intercept Statute. They concealed their actions precisely because Plaintiff would have stopped them if notified.

74. Defendants' retaliatory actions were substantially motivated by Plaintiff's success in *Brooks I* and intended to punish him for exercising his constitutional right to petition the court.

75. As a result of Defendants' retaliation, Plaintiff has suffered:

76. Loss of his $3.5 million judgment;

77. Federal tax liability on funds never received;

78. Emotional distress, financial hardship, and loss of use of funds, and;

79. Harassment through improper victim involvement;

80. Defendants' actions were intentional, malicious, and undertaken in bad faith. These adverse actions described above were substantially motivated by Defendants' desire to retaliate against Plaintiff for exercising his First Amendment rights and to punish him for prevailing in litigation against Defendant CDOC. Such retaliation would deter a person of ordinary firmness from engaging in litigation against the State.

81. Plaintiff is entitled to declaratory and injunctive relief, compensatory damages, damages for

emotional distress and loss of use of funds, and punitive damages against all officials whose conduct was retaliatory and intentional. Defendants' retaliatory acts have caused Plaintiff significant harm, including the loss of his $3.5 million judgment, incurrence of immense tax liability, emotional distress, loss of use of funds, and financial hardship—all of which were intended to cause a chilling effect on any inmate who dares challenge the State's conduct.

## CLAIM FOUR
**The Colorado Restitution Act is Unconstitutional as Applied to Plaintiff for Violating the Excessive Fines Clause of the United States Constitution**

82. This claim challenges Colorado's Restitution Act as unconstitutional as applied to Plaintiff under the Excessive Fines Clause of the Eighth Amendment, incorporated against the States through the Fourteenth Amendment. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

83. When Plaintiff was sentenced, he was ordered to pay $5,131,760.96 in restitution. At the same time, the State foreclosed any ability to make repayment by sentencing him to thirty-two years in prison, the harshest securities-fraud sentence ever imposed on a first-time offender, with conviction coming by plea.

84. Colorado law then in effect, C.R.S. § 18-1.3-603(4)(b)(I), required mandatory interest of 8% per year on restitution regardless of ability to pay. Plaintiff was assessed more than $4 million in mandatory interest while incarcerated, averaging approximately $34,000 per month.

85. Plaintiff had no meaningful income while serving a decades-long sentence, and the trial court recognized his inability to pay. Nonetheless, the statute prohibited any waiver of

18

interest.

86. Imposing millions of dollars of mandatory restitution interest on a person with no ability to pay punished Plaintiff solely for his poverty, in violation of the Excessive Fines Clause and *Bearden v. Georgia*, 461 U.S. 660 (1983).

87. In 2019, Colorado amended its law to suspend restitution interest accrual during DOC incarceration. See § 18-1.3-603(4)(b.5)(I), C.R.S. (as amended by H.B. 19-1310). This amendment acknowledged the prior scheme was excessive and unconstitutional, consistent with *Timbs v. Indiana*, 139 S. Ct. 682 (2019).

88. Plaintiff is constitutionally entitled to retroactive relief from all restitution interest assessed during his incarceration, from April 27, 2010, through August 15, 2021.

89. Even after release, charging Plaintiff $34,000 per month in restitution interest remains punitive, not compensatory, and is excessive as applied to him given his continuing inability to pay.

90. As applied, Colorado's restitution interest scheme has assessed Plaintiff over $4 million in unlawful charges, nearly doubling his obligation, destroying his post-release economic prospects, and inflicting ongoing harm.

91. Plaintiff seeks declaratory and injunctive relief vacating all restitution interest assessed during his incarceration, a declaration that Colorado's mandatory interest provision is unconstitutional as applied to him, and an order prohibiting further assessment of restitution interest on his judgment.

**D. REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed*
*to identify the relief you are requesting, use extra paper to request relief. Please indicate that*
*additional paper is attached and label the additional pages regarding relief as "E. REQUEST*
*FOR RELIEF."*


     **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his
favor and against all Defendants, jointly and severally, and award the following relief:

**I.  Declaratory Relief**

    1. Declare that Defendants' actions in filing and enforcing the restitution lien against
Plaintiff were unlawful and void *ab initio*.

    2. Declare that Defendants' actions violated Plaintiff's rights under the First
Amendment to the United States Constitution by retaliating against him for protected
petitioning activity.

    3. Declare that Defendants' actions violated Plaintiff's rights under the Due Process
Clause of the Fourteenth Amendment.

    4. Declare that Defendants engaged in a civil conspiracy, using unlawful means and
overt acts, to deprive Plaintiff of his constitutional rights and property.

    5. Declare that Colorado's mandatory restitution-interest scheme, as applied to
Plaintiff, violates the Excessive Fines Clause of the Eighth Amendment.


**Injunctive Relief**

    6. Order Defendants to immediately remove the fraudulent restitution lien from the
Colorado Secretary of State's records.

    7. Prohibit Defendants from invoking C.R.S. § 24-30-202.4 or any vendor offset

procedure to seize Plaintiff's funds based on restitution debts not authorized by statute.

8. Require the return of all funds seized from Plaintiff under the fraudulent lien and intercept, with statutory interest of 8%, which is the same percentage Mr. Brooks is required to pay on his restitution interest.

9. Order Defendants Weiser, Mileham, Jaros, and relevant state agencies to adopt training and supervisory measures to ensure compliance with constitutional due process and statutory debt-collection limits.

10. Prohibit the State of Colorado and its agents from assessing, collecting, or enforcing restitution interest against Plaintiff for the period of his incarceration (April 27, 2010 – August 16, 2021), and prospectively while he remains unable to pay.

11. Vacate all restitution interest assessed against Plaintiff during and after incarceration, estimated to exceed $4 million.

**Compensatory and Special Damages**

12. Award Plaintiff $7,000,000 in compensatory damages to restore the value of the $3.5 million judgment wrongfully seized, accounting for taxation consequences.

13. Award Plaintiff an additional $3,000,000 in special damages for consequential financial losses, including IRS tax liability on the wrongfully issued 1099, costs of litigation, and loss of use of funds.

14. Award Plaintiff $10,000,000 to satisfy his restitution obligation in full, thereby protecting victims from further harm and ensuring Plaintiff is not subjected to ongoing retaliatory actions.

**Punitive Damages**

15. Award punitive damages in the amount of $40,000,000 against all individual Defendants in their individual capacities for willful, wanton, negligent, and malicious conduct in violation of Plaintiff's constitutional rights.

16. Recognize that Defendants' conduct represents maximum reprehensibility under *BMW v. Gore*, 517 U.S. 559 (1996), and *State Farm v. Campbell*, 538 U.S. 408 (2003), justifying a substantial punitive award.

17. Note that punitive damages are especially appropriate to punish and deter public officials who abuse their power, consistent with *Smith v. Wade*, 461 U.S. 30 (1983).

18. Find that a punitive award in this case, set at approximately twice the compensatory

damages requested, is constitutionally reasonable and necessary to deter future misconduct.

## II.    Other Relief

19. Plaintiff respectfully requests that the Court consider referring this matter to the U.S. Department of Justice for investigation into potential violations of 18 U.S.C. §§ 241–242.

20. Plaintiff further requests that the Court consider referring attorney misconduct issues to the Colorado Office of Attorney Regulation Counsel

21. Award Plaintiff his costs, reasonable expenses, and any fees recoverable under 42 U.S.C. § 1988 or other applicable authority. In the alternative, Plaintiff respectfully requests recognition of his pro se work at a reasonable rate, as denial of any compensation would result in unequal treatment.

22. Awar such other relief as the Court deems just and proper.

## F. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, has overwhelming evidentiary support and more to come after a reasonable opportunity for further investigation and discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

s/Jason Brooks
(Plaintiff's signature)


09/09/2025
(Date)

22